UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EARL P. THOMPSON | * | CIVIL ACTION NO. 16-17542 |
| Plaintiff, | * | |
| VERSUS | * | JUDGE CARL J. BARBIER |
| | * | |
| RYAN ZINKE, SECRETARY OF THE. INTERIOR | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| Defendant | * | |
| | * | JURY TRIAL DEMANDED |

* * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Earl Thompson ("Thompson"), who respectfully submits Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss and Motion for Summary Judgment in the above-captioned proceedings. For the reasons set forth below, both of Defendant's motions should be denied, as there is no merit or basis for granting either.[1]

### I.  INTRODUCTION

As demonstrated in this brief, the record of this dispute clearly demonstrates that there are material issues of fact that can only properly be decided by a jury.  However, a single statement by Ryan Zinke, U.S. Secretary of the Interior, provides all of the context necessary for this Honorable Court to reach that conclusion for itself.  As Secretary Ryan Zinke has stated:

> It's time to acknowledge that we have a problem. Unfortunately, the survey shows that harassment, intimidation, and discrimination have been a common practice at Interior. A culture of tolerance of such behavior tarnishes our noble mission of stewardship and breaches public trust. I'm speaking today to make it clear that the culture of harassment, intimidation

---

[1] As a result of the information provided via discovery, Plaintiff does hereby voluntarily dismiss all claims alledged in his Complaint except his claim for employment discrimination based on race.  Should the Court require a formal Voluntary Motion to Dismiss, Plaintiff shall submit same immediately.

1

>  which this administration inherited has come to an end. I've already removed four senior leaders that were guilty of inappropriate behavior and I will remove four hundred more if necessary. Intimidation, harassment, and discrimination is a cancer to any organization. However deep it goes, we will remove it from Interior. No one in Interior should have to suffer silently afraid of retaliation or isolation when they're just trying to do their job. We have an important mission and inappropriate actions prevents us from achieving mission success.[2]

The record of this dispute establishes that Plaintiff Earl Thompson was a victim of just the sort of discrimination and harassment that the Secretary admits has been a pervasive characteristic of employment at the U.S. Department of Interior.

## II.     STATEMENT OF FACTS

### *Thompson's Job Experience and Employment History*

Earl Thompson is a sixty-seven (67) year old African-American male.[3] Forty (40) years ago, on or about May 1, 1978, Thompson began his employment with the Defendant as a GS-1311-5 Physical Science Technician in Defendant's Stratigraphic Mapping Unit. At that time, he worked alongside geophysicist and geologist evaluating and inputting geological and geophysical data into Defendant's data collecting system.[4] In 1985, Thompson was transferred to Defendant's Production Section as a GS-802-8 Petroleum Engineer Technician. As a PE Tech, Thompson was primarily responsible for interpreting production data, including but not limited to surface and bottomhole pressure readings, pipeline flow rates and production rates. After interpreting the production data, Thompson was responsible for inputting the data into Defendant's data base system known as the Technical Information Management System ("TIMS").[5]

---

[2] Exhibit A: Earl Thompson Declaration.
[3] Id.
[4] Id. (See Attached Earl Thompson Resume)
[5] Id.

After working in Defendant's Production Section for ten (10) years, in 1995 Thompson was transferred to Defendant's Structures and Technical Support Section as a GS-802-8 Civil Engineering Technician. Thompson has remained in this section for the past twenty-three (23) years. Presently, Thompson is a GS-802-10 Civil Engineering Tech.[6] As a CE Tech, Thompson's responsibilities include receiving, organizing, examining, correlating and managing annual offshore platform inspection reports for the Gulf of Mexico and inputting that data into TIMS. Needless to say, Thompson has amassed extensive experience inspecting offshore platforms and pipeline systems, primarily because pipeline systems are the primary components of any offshore platform. As both a Civil and Petroleum Engineering Tech, Thompson traveled offshore for thirty (30) years, inspecting oil company platforms and pipelines and is therefore proficient in the use of ArcView, a mapping program that is the precursor to ArGIS.[7]

Remarkably, during his decades of work in the industry, Plaintiff Thompson has never received an unsatisfactory job performance rating. In fact, from 1978 until his most recent job performance evaluation, Thompson has routinely received either a "superior" or a "fully satisfied" job performance rating. As a result, Defendant has bestowed upon Thompson numerous awards, including monetary awards, star awards, "on the spot" awards, outstanding quality improvement awards, achievement awards, and other performance-based awards.[8]

In September of 2015, there was a vacancy for a Petroleum Engineering Technician position in the Measurement Approval and Enforcement Section, Comingling and Measurement Approval Unit ("C&MA"). With his extensive experience as an Engineering Technician, Thompson applied for the position. Ignoring Plaintiff's unquestionably superior qualifications for the position, Kelly Johnson, the selecting official for the Petroleum Engineering Technician

---

[6] Exhibit A: Thompson Declaration.
[7] Id.
[8] Id.

3

position and the supervisor of the C&MA Unit, chose Rose Hampton, a Caucasian female, to fill the position.[9] Johnson claims that he chose Hampton because he believed she was better qualified for the Tech position than Thompson.[10] However, the record reveals this to be an entirely baseless assertion, and mere pretext for the discriminatory passing over of Thompson, as the more qualified and best prepared candidate for the job.

*Rose Hampton's Inferior Qualifications*

Defendant hired Hampton as a secretary in 1998. Hampton worked as a secretary from 1998 until 2009. In 2009, Defendant offered its clerical employees an opportunity to advance to technicians through its "upward mobility" technician trainee program in its Pipeline Group.[11] Hampton applied for the trainee position with Defendant's Pipeline Group and was offered the job. From 2009 until 2012, Hampton was a tech in training.[12] After training for three years, in 2012, Hampton was allowed to work as a Tech without supervision.[13]

As noted above, in 2015, after a mere three years as an unsupervised Tech, Hampton applied for the Petroleum Engineering Tech position in Defendant's C&MA Unit. Though Hampton had only been an unsupervised technician for 3 years, Johnson chose Hampton over Thompson—a technician with 40 years experience—to fill the vacant Petroleum Engineering Technician position allegedly because Hampton was somehow more qualified for the position in his estimation than was Thompson, despite his clearly superior work history and real-world off-shore experience. Specifically, Johnson claims to have chosen Hampton for the position because she had experience in Defendant's Pipeline Section and because she was familiar with ArcGIS, a mapping program. However, Hampton admitted that although she had worked in Defendant's

---

[9] Exhibit B: Kelly Johnson Deposition, pg. 38.
[10] Id.
[11] Exhibit C: Rose Hampton's Deposition, pg. 42-44, 50.
[12] Id. at pg. 51.
[13] Id. at pg. 57.

Pipeline Section, she doesn't "know much about pipelines."[14] With regard to the ArcGIS software, Ms. Hampton admitted that she only participated in a one-day training session on how to use the computer software program and, therefore, her use of the program has been confined to merely inputting data and printing reports.[15] Notably, since Johnson has been the supervisor of the C&MA Unit, upon information and belief, not one African American male has been hired in the C&MA Unit as technician or as an engineer.[16]

### III.   LAW AND ARGUMENT

#### A.  Summary Judgment and Dismissal Standards

Summary judgment is *only* appropriate when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.[17] "There is no 'genuine issue' only when the record taken as a whole could not lead a rational trier of fact to find for the non-movant."[18] That is, the movant is entitled to summary judgment if, and only if, after construing the evidence *in the light most favorable to the nonmoving party* and *drawing all justifiable inferences in favor of the nonmoving party*, no genuine issues of material fact remain to be tried.[19] To that end, to determine whether summary judgment should be granted, an examination of the substantive law is necessary. The substantive law identifies the disputes over facts that affect the outcome of the litigation, i.e., those facts that are material.[20]

As for motions brought under Rule 12(b)(6), dismissal for "failure to state a claim," under Federal Rule of Civil Procedure 8(a)(2), a plaintiff is only required to set forth in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief"

---

[14] Id. at 5
[15] Id. at pg. 66-70.
[16] Exhibit A.
[17] Fed. R. Civ. P. Rule 56.
[18] *Giroir v. Pittman,* 2008 WL 1884054 (E. D. La. 4/27/2008) (citing *Matsuchita Electric Industrial Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).
[19] Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255; 106 S.Ct. 2505; 91 L.Ed.2d 202(1986).
[20] *Id*. at 248.

in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests."[21]  This concept, commonly referred to as "notice pleading," does not require specificity. Instead, as stated by the Supreme Court of the United States, in a complaint, a plaintiff need only put the defendant on *notice* of the claims that the plaintiff believes likely exist based on the limited facts available to a plaintiff prior to conducting discovery.

As a matter of well-settled law, dismissal under Rule 12(b)(6) is only appropriate when a complaint fails to *state* a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff is only required to plead enough facts "to state a claim to relief that is *plausible* on its face."[22]  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]  Thus, "the statement must present more than 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'"[24] In reviewing a Rule 12(b)(6) motion, a court *must* accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[25] Accordingly, to survive Defendant's Rule 12(b)(6) motion to dismiss, Thompson is only required to demonstrate that he has plead facts sufficient to state a claim that is *plausible* on its face.  Given the pleadings in this matter and the record of evidence developed thus far, Plaintiff Thompson can clear this bar.

### B.  Plaintiff was subjected to Race-Based Discrimination Covered Under Title VII

"It is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise."[26] Under Title VII, it is unlawful for an employer to either fail or refuse to hire or

---

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (citations omitted).
[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (emphasis added).
[23] *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).
[24] *Roque v. Jazz Casino Co. LLC*, 388 Fed. Appx. 402, 405 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677).
[25] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).
[26] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S. Ct. 1817 (1973).

promote a qualified individual or otherwise intentionally discriminate against an individual with respect to the terms, conditions, or privileges of employment because of the race of that individual.[27]  Plaintiff Thompson is an African-American male with more than forty years of experience as a Technician for the Defendant, yet despite his experience and his exemplary work performance, Kelly Johnson selected Rose Hampton, a Caucasian female with only 3 years of unsupervised experience as a technician, to fill the vacant technician position in C&MA Unit.

*Circumstantial Evidence is as Good as Direct Evidence*

The Supreme Court has recognized that "the question facing triers of fact in discrimination cases is both sensitive and difficult. . . [t]here will never be 'eyewitness' testimony to the employer's mental processes."[28]  In the absence of direct evidence of discrimination, courts have applied the *McDonnell-Douglas* framework, which is principally based on circumstantial evidence.[29]

For purposes of summary judgment, under *McDonnell-Douglas*, the Plaintiff first has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination.[30]  The plaintiff is only required to make a minimal showing.[31]  Second, if the plaintiff succeeds, the burden of production shifts to the defendant who must "articulate some legitimate, nondiscriminatory reason" for its conduct.[32]  Third, if the defendant is able to carry its burden, the plaintiff is given "the opportunity [to demonstrate that an issue of material fact exists and]

---

[27] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§200e, et seq., unlawful discrimination in hiring under 42 U.S.C. §2000e-2(a)(1).
[28] *Aikens*, 460 U.S. at 716.
[29] *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[30] *McDonnell Douglas*, 411 U.S. at 802.
[31] *Burdine*, 450 U.S. at 253.
[32] *McDonnell Douglas*, 411 U.S. at 802.

that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[33]

*Plaintiff's Prima Facie Case*

Under to the *McDonnel Douglas framework*, to establish a *prima facie* case of discrimination, Thompson must show: (1) that he belongs to a protected class; (2) that was qualified for and performed his job adequately or satisfactorily; (3) that he suffered an adverse employment action; and (4) he was replaced by someone outside of his protected class or that he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class.[34]

All four elements can be disposed of in short order. As stated above, Plaintiff Thompson is African-American, which is a protected class. Also, as stated above, Plaintiff Thompson has forty years of experience as a technician along with an exemplary job performance record, making him fully qualified to fill the vacant Technician position. The record firmly establishes and leaves no doubt as to his qualifications to perform the duties for the position at issue. The third element necessary to establish a *prima facie* case is the occurrence of an adverse employment action. The record clearly reflects that an adverse employment action was taken against Thompson by Defendant. Thompson was not awarded the technician position that he applied for in September of 2015, despite his superior qualifications and work history. Regarding the fourth element, the record reflects that Defendant selected Rose Hampton, a Caucasian female, to fill the vacant position.

---

[33] *Pitre v. Wadley Regional Medical Center*, 73 Fed. Appx. 21, 23 (5th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)).
[34] *Harrison v. Corr. Corp. of America* (5th Cir., 2012).

Accordingly, Thompson has established a *prima facie* case of race-based discrimination. Thus, Defendant must now articulate to this Court's satisfaction some legitimate, nondiscriminatory reason for its adverse actions against Thompson.

### B.   Defendants' Purported Nondiscriminatory Reasons: Hampton was Better Qualified

Once the plaintiff has established a *prima facie* case, an inference of unlawful discrimination is raised. The burden then shifts to the defendant-employer to proffer a legitimate, non-discriminatory reason for the challenged employment action.[35] The Defendant must simply provide a non-discriminatory reason(s) for not selecting Thompson. Under *McDonnell Douglas*, the Defendant does not have to persuade the court that it was actually motivated by the reasons asserted. The Defendant only has to proffer a reason for not selecting Thompson that appears legitimate and non-discriminatory on the surface.

Throughout this case, Defendant alleged that Thompson was not selected to fill the vacant Technician position because Hampton was better qualified than he. Because the analysis does not require the proffered explanation for the decision to be reasonable at this juncture, Defendant has satisfied its burden.

### C.   Defendant's Reasons Mere Pretext

Presuming for purposes of this analysis that Defendant's purported nondiscriminatory reason is found to be adequately supported by the record, Plaintiff is then afforded the opportunity to show that a reasonable trier of fact could conclude that Defendant's stated reasons were indeed pretextual.

In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court declared that in cases involving circumstantial evidence of

---

[35] *Burdine*, 450 U.S. at 254.

9

discrimination, if the employee demonstrates that the employer's proffered nondiscriminatory reasons are not persuasive--that is, could in fact be false--the trier of fact is permitted to <u>infer</u> intentional discrimination:

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, . . . "no additional proof of discrimination is required."[36]

Because this matter is before the Court on a Motion for Summary Judgment, Plaintiff does not need to prove that Defendant's reason was a pretext for discrimination, as would be demonstrated at trial.  Rather, Plaintiff must tender factual evidence admissible at trial that would lead a jury to reasonably conclude that Defendant's reason is a pretext for discrimination.[37] Consequently, should Plaintiff Thompson succeed in presenting evidence that a reasonable factfinder could conclude that Defendant's proffered explanation for not selecting him were false, proof of intentional discrimination is a question of fact, not a question of law.  Thus, summary judgment is inappropriate.

### D.   Defendants' Reasons Mere Pretext

Defendant's alleged non-discriminatory reason for selecting Hampton and not Thompson, is that Johnson, Defendant's selecting authority, believed that Hampton was more qualified than Thompson. However, substantial—in fact overwhelming—evidence exists that demonstrates that a reasonable factfinder could conclude that Defendant's proffered explanation for selecting Hampton was completely and utterly false.

The duties of the C&MA Unit Tech position at issue are the following:

---

[36] *St. Mary's*, 509 U.S. at 511.
[37] *Bodenheimer v. PPG Industries*, 5 F.3d 955, 958 (5th Cir. 1993) citing Fed.R.Civ.P. 56(c) and *St. Mary's*, 509 U.S. at 511, 113 S.Ct. at 2747.

Independently reviews all measurement and comingling approvals and the associated applications to ensure that the operations system numbers mentioned in the process flow description accurately correspond to the given departing pipeline(s). Also makes entries in the pipeline-comingling table to TIMS in order to tag all pipeline segments in the flow path with the appropriate system numbers. Makes all necessary corrections with respect to system numbers, metering information, production equipment, lease/unit information, and pipeline segment numbers on the file copy of the process flow schematic and informs the assigned engineer of these corrections.[38]

*Pipeline Experience*

Hampton testified as to the following regarding her knowledge and expertise with respect to pipelines:

> Q: All right. And it's also my understanding that you went to Robert, Louisiana, and you were trained on, or at least--I didn't really get an understanding of what type of training you received in Robert, Louisiana.
>
> A: We went there so they could show us the tubes and the trees and how they worked for the oil companies, 'cause I didn't know anything about any of that.
>
> Q: And if you're not in the industry, you wouldn't know.
>
> A: Right.
>
> Q: Do you have an understanding of how pipelines work in the oil industry?
>
> A: A little bit.
>
> Q: Okay. What do you know about pipelines?
>
> A: I know--honestly, I don't know much about pipelines.[39]

Moreover, Hampton went on to say the following:

> Q: ….Have you ever had any experience [ ] working with a pipeline?
>
> A: No.

Because Hampton admittedly doesn't "know much about pipelines," it is virtually inconceivable that she could "*independently* review all measurement and comingling approvals and the

---

[38] Defendant's Memorandum in Support of Motion to Dismiss and Motion for Summary Judgment, pg. 4.
[39] Exhibit C: Rose Hampton's Deposition, pg. 54.

11

associated applications to ensure that the operations system numbers mentioned in the process flow description accurately correspond to the given departing pipeline(s)." Similarly, with only three years experience as an unsupervised technician and very little knowledge about pipelines, it is hard to fathom that Hampton could *independently* recognize if the information that she would be called upon to review is accurate or would be able to *independently* make "corrections with respect to system numbers, metering information, production equipment, lease/unit information, and pipeline segment numbers on the file copy of the process flow schematic . . ." (emphasis added)  In contrast, as both a Civil and Petroleum Engineering Tech, Thompson traveled offshore for thirty (30) years inspecting oil company platforms and pipelines interpreting production data, including but not limited to pipeline flow rates and production rates. Thus, Plaintiff has the requisite knowledge and the expertise to independently review, recognize and make corrections when necessary to measurements and system numbers.

*Computer Experience*

Importantly, as noted above, regarding ArcGIS, Hampton testified that she only participated in a one-day training session on how to use the computer software program and admitted that her use of the program has been limited to merely inputting data and printing reports. Nevertheless, Johnson testified that he provided Hampton with an opportunity to showcase her ability to use ArcGIS during her interview.[40]  In stark contrast, Thompson, who is proficient with using ArcView, was not even offered an opportunity to demonstrate his proficiency with ArcGIS.   Notably, both programs consist of ArcMap and ArcCatalog.[41] Johnson's unfair tactics provide further evidence that Johnson's alleged reason for not selecting Thompson was in fact pretextual.

---

[40] Exhibit D: Kelly Johnson Sworn Affidavit, Report of Investigation Exhibit F3, pg. 17.
[41] Exhibit A.

From Hampton's own testimony, one could not reasonably infer that she possessed any analytical understanding of pipelines or the industry. The description given by Johnson in his Rationale for Selection, as noted in Defendant's Memorandum in Support of their Motion to Dismiss and Motion for Summary Judgment, gives the impression that Hampton was far superior than Thompson for the position based upon her time in the Pipeline Section. His assertion that having someone with Hampton's experience would be advantageous to their unit is made-up! In reality, Hampton, as noted above, admits to not knowing much about pipelines. Her pipeline experience was limited to inputting data that was already posted.

The Fifth Circuit has held that "differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.[42] *Celestine*, 266 F.3d at 357.  Upon conducting discovery and assessing the actual experience of Thompson and Hampton, it is undisputed that no reasonable person would have chosen Hampton over Thompson. He is the better candidate hands down.  He has experience as a Petroleum Engineer Technician and hands-on experience working with pipelines.

## IV.   CONCLUSION

Summary judgment is rarely appropriate for a determination based on subjective facts, such as intent, motive, malice, knowledge, or good faith.  The issues involved in this case will require the fact finder to make multiple credibility determinations of the type particularly dependent upon the fact-finder's first hand observation of the witnesses called in this matter. The facts asserted by the parties in this matter are clearly open to different interpretations,

---

[42]*Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001) (quoting *Scott v. Univ. of Miss.*, 148 F.3d 493, 508 (5th Cir. 1998))

therefore rendering summary judgment inappropriate for the adjudication of this dispute. Rather, the record in this dispute clearly reflects the existence of a proper prima facie case and numerous issues of material fact that can only properly be decided by a jury. For these reasons, Defendant's Motion to Dismiss and Motion for Summary Judgment should be denied.

        Respectfully submitted,

        s/ G. Karl Bernard
        G. Karl Bernard (#24294) T.A.
        G. KARL BERNARD & ASSOCIATES, LLC
        1615 Poydras Street, Suite 220
        New Orleans, Louisiana 70112
        Telephone:   (504) 412-9953
        Facsimile:    (504) 412-8088
        karlbernardlaw@bellsouth.net

        Attorney for Plaintiff, Earl Thompson

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that the foregoing pleading was served on all counsel of record via the court's CM-ECF electronic filing system this 20th day of June, 2018.

        s/ G. Karl Bernard
        G. Karl Bernard